883 F.2d 70
 1989-2 Trade Cases 68,693
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James D. FRANZEN, Defendant-Appellant.
 No. 88-5647.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1989.
Decided Aug. 4, 1989.
 
 Andrew Lewis Frey (Andrew J. Pincus, Richard J. Favretto, Kerry Edwards Cormier, Mayer, Brown & Platt, Barnett D. Skolnik, Whiteford, Taylor & Preston, on brief) for appellant.
 Marion Luyken Jetton (Charles F. Rule, Assistant Attorney General, John J. Powers, III, United States Department of Justice, on brief) for appellee.
 Before HARRISON L. WINTER, PHILLIPS, and CHAPMAN, Circuit Judges.
 HARRISON L. WINTER, Circuit Judge:
 
 
 1
 A jury convicted defendant, James D. Franzen, of violating Section 1 of the Sherman Act, 15 U.S.C. Secs. 1-7, by participating in a price-fixing conspiracy. In this appeal, Franzen contends that the evidence presented at trial was legally insufficient to support his conviction. We think this contention is lacking in merit, and so we affirm the judgment of conviction.
 
 I.
 
 2
 In August 1987 defendant James D. Franzen was indicted, along with numerous other persons and companies, on a charge of conspiracy to fix the price of chain link fence sold in the southern United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. Secs. 1-7. This conspiracy was alleged to have operated from December 1984 to July 1986. The charge against Franzen stemmed from his activities as an executive of Davis Walker Corporation, one of several competing fence manufacturers. The fact that there was a price-fixing conspiracy is not contested. The sole issue is the role of Franzen, if any, in the conspiracy.
 
 
 3
 To prove that Franzen knew of the existence of and participated in the conspiracy, the government presented testimonial and documentary evidence of Franzen's contacts with Davis Walker salesman and admitted conspirator Bruce J. Patrick, whom Franzen supervised. Patrick testified that he himself met repeatedly with representatives of competing manufacturers to encourage the unanimous raising of prices and to eliminate price-cutting. He testified further that he met with his supervisor, Franzen, before and after these meetings to discuss them, that during these discussions he indicated to Franzen that the aim of the meetings was the reduction of price competition, and that Franzen approved of his activities. The government also offered documentary proof of these activities and of a Davis Walker price increase made in connection with the conspiracy, a price increase the release of which Franzen expressly approved.
 
 
 4
 Franzen unsuccessfully moved for a judgment of acquittal during the trial. His post-trial motion for acquittal or, in the alternative, for a new trial was also denied. In appealing, he contends that the evidence of his knowledge of and participation in the conspiracy was legally insufficient to support a guilty verdict, especially when there was no evidence that he attended any price-fixing meetings or had any other conspiratorial contacts with competitors.
 
 II.
 
 5
 To prove its case against an alleged conspirator, the government must show that he knew the purpose of the conspiracy and that he participated in it as evidenced by the taking of some action in furtherance of the object of the conspiracy. See United States v. Laughman, 618 F.2d 1067, 1075 (4 Cir.), cert denied, 447 U.S. 925 (1980). "[O]ne who authorizes, orders, or helps perpetrate the crime" has taken an action sufficient to make him a participant in a price-fixing conspiracy. United States v. Wise, 370 U.S. 405, 416 (1962). The government may prove knowledge of and participation in a conspiracy by either direct or circumstantial evidence. See Laughman, 618 F.2d at 1075; see also United States v. Norris, 749 F.2d 1116, 1121 (4 Cir.1984), cert. denied 471 U.S. 1065 (1985) ("The existence of a conspiracy need not be proved by direct evidence, but may be inferred from the facts and circumstances of the case.").
 
 
 6
 "[I]f there is substantial evidence, taking the view most favorable to the Government, to support" the jury's verdict, the verdict must be sustained. Glasser v. United States, 315 U.S. 60, 80 (1942); see United States v. Tresvant, 677 F.2d 1018, 1021 (4 Cir.1982). Thus, the issue before us is whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Laughman, 618 F.2d at 1075 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 7
 Franzen contends that the government failed to offer substantial evidence either that he knew of the conspiracy or that he took any action sufficient to make him a participant in it. He asserts that, at best, the government's evidence of his knowledge of the conspiracy was "hopelessly ambiguous." He argues, moreover, that the record is "devoid of evidence demonstrating that Franzen intentionally became a participant in the conspiracy." We address these contentions in turn.
 
 A.
 
 8
 Franzen asserts that the government showed only that he knew that Patrick was meeting with and talking to competitors, not that he knew that the meetings were for the purpose of fixing prices and that that purpose was accomplished. He contends that the information Patrick gave him about the meetings was as consistent with innocent and lawful meetings in connection with industry trade shows as with price-fixing meetings.
 
 
 9
 As the government notes, however, Patrick testified that he told Franzen more than simply that he was meeting with competitors. Prior to a February 1985 trade show in Phoenix, Arizona, for example, Patrick told Franzen that he was going to "meet with the competitors," "to talk about the annual price increase, talk about the two tier price system, talk about ... charging freight, and generally stopping the price war...." Patrick testified that Franzen agreed to his talking with competitors about these subjects. After the meeting, Patrick testified, he told Franzen that he had "had the meeting, that it seemed to go very well, and [Patrick] felt that there would be some additional effort made to accomplish the things" that Patrick had told Franzen would be discussed at the meeting. Patrick testified that Franzen "was very happy to receive the news."
 
 
 10
 Similarly, documentary evidence showed that Franzen knew that Patrick was negotiating with competitors to effect a concerted price increase. A May 30, 1985, memorandum from Patrick to Franzen, for example, described Davis Walker's marketing goals and the means that Patrick had been using to achieve them:
 
 
 11
 One of our plans in our strategy for the last 12 months was not to actively pursue expanding our customer base too far away from home. We have encouraged other manufacturers not to do so also. This plan was to create some confidence among manufacturers that the previous practice of stealing each others accounts with low prices was ended.
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 This worked along with preaching about let's achieve having a profitable price level for the manufacturers, and by not deviating from such pricing, the profit-squeezed wholesale operations would adjust their pricing also, which they have. This accomplishment has produced the result of most current manufacturers are now profitable, ... plus the wholesalers are more profitable also.
 
 
 15
 Patrick testified that he gave this memorandum to Franzen in person.
 
 
 16
 We deem this testimonial and documentary proof, viewed in the light most favorable to the government, to constitute substantial evidence that Franzen knew that Patrick's contacts with competitors were for the purposes of fixing prices and eliminating competition, and that those purposes had been accomplished. Clearly, a "rational trier of fact could have found th[is] essential element[ ] of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Accordingly, Franzen's claim that the government failed to offer substantial evidence showing that he knew of the conspiracy is without merit.
 
 B.
 
 17
 Franzen next contends that the government failed to offer substantial evidence that he participated in the conspiracy. He urges repeatedly that this case is distinguishable from other price-fixing conspiracy convictions because he himself never met with competitors to fix prices.
 
 
 18
 A showing that Franzen met with competitors is, however, clearly not necessary for a conviction. "[A]uthoriz[ing], order[ing], or help[ing] perpetrate the crime" is sufficient to make one a participant in a price-fixing conspiracy. Wise, 370 U.S. at 416. A single act will suffice to show participation if the circumstances permit the inference that the act was intended to advance the ends of the conspiracy. See United States v. Vega, 860 F.2d 779, 795 (7 Cir.1988).
 
 
 19
 The record establishes that in numerous instances Franzen authorized actions necessary to the carrying out of the conspiracy. As noted above, Patrick testified that Franzen expressly agreed to Patrick's talking with competitors about "the annual price increase, ... the two tier price system, ... charging freight, and ... stopping the price war...." Moreover, Franzen approved of this action afterward. Similarly, Patrick testified that Franzen gave prior authorization for Patrick's successful effort to get the manufacturer Reeves Southeastern to stop cutting prices.
 
 
 20
 In addition, Patrick testified that Franzen authorized the release of Davis Walker's January 15, 1985, price increase. This act put into effect a price increase that Patrick had discussed with competitors at a December 1984 trade show held in Dallas, Texas, which Patrick had talked about with Franzen in advance.
 
 
 21
 This evidence, viewed in the light most favorable to the government, constitutes substantial evidence that Franzen authorized at least some of Patrick's contacts with competitors for the purpose of fixing prices as well as the release of at least one of the resultant price increases. We think that the circumstances permit the inference that these acts were intended to advance the ends of the conspiracy. See Vega, 860 F.2d at 795. As with the element of knowledge of the conspiracy, then, a "rational trier of fact could have found th[is] essential element[ ] of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Consequently, Franzen's contention that there was no substantial evidence showing that he participated in the conspiracy is also without merit.
 
 
 22
 AFFIRMED.